[No. 39702-1-II.   Division Two.   August 16, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. ABDUL K. CALHOUN, *Appellant*.

156

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Melody M. Crick* and *Amanda Kunzi, Deputies*, for respondent.

¶1 QUINN-BRINTNALL, J. — A jury found Abdul Calhoun guilty of first degree robbery, under RCW 9A.56.200; first degree burglary, under RCW 9A.52.020(1)(b); and two counts of second degree assault, under RCW 9A.36.021(1)(e). In Calhoun's first appeal, we held that the assault convictions merged into the robbery conviction and remanded for resentencing. *State v. Calhoun*, noted at 142 Wn. App. 1022 2008 WL 77389, 2008 Wash. App. LEXIS 31, *review denied*, 165 Wn.2d 1030 (2009).

¶2 The resentencing court allowed the State to introduce additional evidence proving Calhoun's criminal history in

accord with the 2008 amendments[1] to the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. Calhoun appeals the resentencing court's decision, arguing that (1) application of the 2008 amendments violates the savings statute, RCW 10.01.040; (2) application of the 2008 amendments violates the ex post facto clauses of the federal and state constitutions; and (3) under the law in effect at the time Calhoun committed the crime, which should have been applied, the State would have been precluded from introducing additional evidence at the resentencing hearing. Calhoun also alleges that he received ineffective assistance of counsel and the prosecutor miscalculated his offender score based on the criminal history listed on his judgment and sentence. We hold that the resentencing court properly applied the 2008 SRA amendments, Calhoun did not receive ineffective assistance of counsel, and the miscalculation of the offender score appears to be a scrivener's error. Accordingly, we affirm but remand for the trial court to correct the scrivener's error on Calhoun's judgment and sentence or, if the miscalculated offender score is not based on a scrivener's error, to resentence Calhoun.

## FACTS

¶3 On July 11, 2005, Calhoun and an accomplice broke into a residential home and stole a safe. A jury found Calhoun guilty of first degree robbery, under RCW 9A.56.200; first degree burglary, under RCW 9A.52.020(1)(b); and two counts of second degree assault, under RCW 9A.36.021(1)(e). Calhoun was originally sentenced on June 2, 2006.

¶4 At Calhoun's initial sentencing hearing, the State argued that Calhoun's offender score should be calculated at nine based on three prior Oregon drug convictions (one point each) and two points for each current offense. The State produced certified copies of the judgments and sen-

---

[1] Laws of 2008, ch. 231.

tences for the three Oregon offenses. The State did not offer any other evidence to establish the comparability of the Oregon offenses with Washington felonies. The trial court calculated Calhoun's offender score as nine. Calhoun's standard sentencing range for first degree robbery was 129 to 171 months, first degree burglary was 87 to 117 months, and second degree assault was 63 to 84 months. The trial court imposed 171 months for the robbery conviction, 117 months for the burglary conviction, and 84 months for each of the assault convictions, with all these sentences to run concurrently.

¶5 After the trial court announced Calhoun's sentence, Calhoun said, "I would like to say that I object to the points being offered at nine points. I only have four points in my history." Report of Proceedings (RP) (June 2, 2006) at 11. The trial court responded, "We've already entered an order in that regard." RP (June 2, 2006) at 11.[2]

¶6 Calhoun appealed, arguing that his double-jeopardy rights were violated because the assault convictions merged with the robbery conviction. In an unpublished opinion, we agreed and remanded the case for resentencing with an order to merge the assault convictions with the robbery

---

[2] There was a brief pause in the proceedings so that Calhoun could sign the sentencing paperwork. It appears that at this time Calhoun signed a stipulation to his prior criminal history and offender score with the sentence "Defendant objects to the calculation of his offender score" written on it. Clerk's Papers (CP) at 16. The form was signed by both attorneys and Calhoun. Calhoun signed the stipulation form "RCW 62A[.]3-419 Exemt (sic) from levy accepted for value and returned." CP at 16. The court made an oral finding: "Mr. Calhoun has signed a number of the pleadings as 'use my exemption for offset and 62(a) settlement enclosure, RCW [62A.]3-419 of this account 541940477 exempt from levy except for value and returned,' and I'm going to acknowledge that as Mr. Calhoun's signature." RP (June 2, 2006) at 12-13. This document is entitled "Stipulation on Prior Record and Offender Score." CP at 15. Based on this document, Calhoun not only stipulated to his offender score but also expressly agreed that any additional criminal history could be introduced in the event of resentencing. But we note certain idiosyncrasies in the document. Most importantly, the stipulation was labeled for use with guilty pleas but Calhoun was convicted following a jury trial. In addition, all the parties seem to agree that Calhoun never stipulated to his offender score or prior history and the record does not reveal how or why this "stipulation" was signed or entered into the record. Accordingly, we do not rely on any portion of this document in our resolution of this appeal.

conviction. *Calhoun*, 2008 WL 77389, at *15, 2008 Wash. App. LEXIS 31, at *40.

¶7 Calhoun's resentencing, which was conducted in a series of four hearings, began in May 2009. The State sought to introduce additional evidence proving the comparability of Calhoun's three Oregon convictions from his initial sentencing hearing. In addition, the State sought to introduce evidence of a fourth Oregon conviction and a 1999 Washington assault conviction, which the State had not presented at the initial sentencing hearing. Calhoun objected to the admission of new evidence, arguing that the State was limited to the record and evidence introduced at the original sentencing hearing. The resentencing court continued the first resentencing hearing in order to allow both parties the opportunity to brief this evidentiary issue.

¶8 On July 1 and 17, 2009, the State argued that (1) it should be allowed to introduce additional evidence in accordance with recent 2008 SRA amendments to RCW 9.94A-.525(21) and .530; and (2) even if the prior law applied, Calhoun's objections at the original sentencing hearing were not sufficient to preclude the State from introducing additional evidence at resentencing. Calhoun argued that (1) applying the 2008 SRA amendments violated the savings statute and the prohibition against ex post facto laws; (2) the resentencing court was obligated to apply the law that was in effect at the time Calhoun committed his offenses; and (3) under the prior law, Calhoun's objections were sufficient to preclude the State from introducing additional evidence at the resentencing. The resentencing court applied the 2008 SRA amendments and admitted all of the State's evidence.

¶9 The State introduced certified copies of judgments and sentences to prove the following prior convictions:

(1) 1995 Delivery of Controlled Substance, Oregon

(2) 1998 Delivery of Controlled Substance, Oregon

(3) 1999 Second Degree Assault, Washington[3]

(4) 2001 Delivery of Controlled Substance, Oregon

(5) 2001 Possession of Controlled Substance, Oregon[4]

The State also presented copies of the Oregon statutes and the corresponding Washington statutes in order to prove comparability. Calhoun objected to the admission of all the State's evidence. The resentencing court accepted all of the State's evidence, found that the State proved all of Calhoun's prior convictions, and found that the Oregon convictions were comparable to the corresponding Washington statutes. Based on the above criminal history, the resentencing court then calculated Calhoun's offender score at eight. The resentencing court calculated Calhoun's standard range as 108 to 144 months on the first degree robbery conviction and 77 to 102 months on the second degree burglary conviction, and imposed concurrent 144-month and 102-month sentences. Calhoun timely appeals.

## ANALYSIS

■ ¶10 As an initial matter, we note that the parties mistakenly contest the necessity for the State to produce evidence regarding the comparability of three of Calhoun's prior Oregon convictions at his resentencing. In order to include out-of-state convictions in an offender score, the foreign offenses must be either legally or factually comparable to a Washington offense. *State v. Larkins*, 147 Wn. App. 858, 862-63, 199 P.3d 441 (2008). Offenses are legally comparable if the elements of the crimes are the same. *In re Pers. Restraint of Crawford*, 150 Wn. App. 787, 793-94, 209 P.3d 507 (2009). Here, the resentencing court determined that the Oregon drug offenses were legally comparable to

---

[3] RCW 9A.36.021(1)(a).

[4] All of Calhoun's Oregon convictions relate to former Or. Rev. Stat. Ann. § 475.992 (1995) (subsequently renumbered at Or. Rev. Stat. Ann. § 475.840 in 2005).

Washington drug offenses based on the statutes cited in the certified judgment and sentences for the Oregon offenses.

¶11 Calhoun appears to argue that because the original sentencing court failed to perform a comparability analysis based on these documents, the resentencing court was also prohibited from doing so. The law does not support his position. Even if the State was bound by the record it created at the original sentencing hearing, it is still appropriate for the resentencing court to perform its own comparability analysis based on that record. *State v. Labarbera*, 128 Wn. App. 343, 350, 115 P.3d 1038 (2005). Accordingly, the 1995 and two 2001 Oregon drug convictions were properly included in Calhoun's offender score at his resentencing.

¶12 The issue before us is whether the resentencing court properly allowed the State to introduce evidence proving the additional 1998 Oregon conviction and the 1999 Washington conviction. Both Calhoun and the State thoroughly briefed and argued the effect of Calhoun's alleged objections based on *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999), *State v. McCorkle*, 137 Wn.2d 490, 973 P.2d 461 (1999), and *In re Personal Restraint of Cadwallader*, 155 Wn.2d 867, 123 P.3d 456 (2005). But whatever the merits of these arguments, the 2008 SRA amendments were specifically enacted to supersede this line of case law.[5] Accordingly, we reach the merits of these arguments only if the resentencing court improperly applied the 2008 SRA amendments. Because, based on these facts, we hold that

---

[5] It is worth distinguishing between the legislature's properly superseding judicial interpretation of a statute prospectively and the legislature's improperly overruling judicial interpretation retroactively. *Compare State v. Varga*, 151 Wn.2d 179, 191, 86 P.3d 139 (2004) ("It is well-established that the legislature may effectively overrule our decisions interpreting statutory terms by prospectively amending a statute."), *with State v. Dean*, 113 Wn. App. 691, 698, 54 P.3d 243 (2002) ("Curative amendments cannot be applied retroactively if they contravene a judicial construction of the original statute." (citing *State v. Jones*, 110 Wn.2d 74, 82, 750 P.2d 620 (1988); *State v. Dunaway*, 109 Wn.2d 207, 216 n.6, 743 P.2d 1237, 749 P.2d 160 (1987); *Johnson v. Morris*, 87 Wn.2d 922, 926, 557 P.2d 1299 (1976))), *review denied*, 149 Wn.2d 1009 (2003).

the legislature did not exceed its authority by enacting the 2008 SRA amendments and the trial court properly applied them, there is no need to determine the merits of the parties' arguments under *Ford, McCorkle,* and *Cadwallader.*

VIOLATION OF THE SAVINGS STATUTE

¶13 The savings statute, RCW 10.01.040, requires that defendants are prosecuted under the law in effect at the time the crime was committed.[6] *State v. Kane,* 101 Wn. App. 607, 610-11, 5 P.3d 741 (2000). But the savings statute applies to only *substantive* changes in the law. *State v. Pillatos,* 159 Wn.2d 459, 472, 150 P.3d 1130 (2007); *State v. Hodgson,* 108 Wn.2d 662, 669-70, 740 P.2d 848 (1987), *cert. denied,* 485 U.S. 938 (1988).

¶14 The 2008 SRA amendments changed former RCW 9.94A.525(21) (2007) as follows:

The fact that a prior conviction was not included in an offender's offender score or criminal history at a previous sentencing shall have no bearing on whether it is included in the criminal history or offender score for the current offense. ~~Accordingly,~~ Prior convictions that were not counted in the offender score or included in criminal history under repealed or

---

[6] RCW 10.01.040 states,

No offense committed and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, unless a contrary intention is expressly declared in the repealing act, and no prosecution for any offense, or for the recovery of any penalty or forfeiture, pending at the time any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, but the same shall proceed in all respects, as if such provision had not been repealed, unless a contrary intention is expressly declared in the repealing act. Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.

previous versions of the sentencing reform act shall be included in criminal history and shall count in the offender score if the current version of the sentencing reform act requires including or counting those convictions. Prior convictions that were not included in criminal history or in the offender score shall be included upon any resentencing to ensure imposition of an accurate sentence.

LAWS OF 2008, ch. 231, § 3.

¶15 In addition, the 2008 SRA amendments changed former RCW 9.94A.530(2) (2007) as follows:

In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537. Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence, except as otherwise specified in RCW 9.94A.537. On remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented.

LAWS OF 2008, ch. 231, § 4.

¶16 In *Pillatos*, our Supreme Court decided whether the legislature's 2005 SRA amendments[7] violated the savings statute or the ex post facto clauses of the state and federal constitutions. 159 Wn.2d at 474-75. Specifically, the *Pillatos* court addressed whether the 2005 SRA amendments responding to the United States Supreme Court's decision in *Blakely*[8] applied to cases that had not yet gone to trial

---

[7] LAWS OF 2005, ch. 68.

[8] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

before the enactment of the amendments. 159 Wn.2d at 465. The 2005 SRA amendments gave trial courts the ability to empanel juries to find the aggravating factors necessary for exceptional sentences in sentencing proceedings. *Pillatos*, 159 Wn.2d at 468. The legislature made the amendments effective immediately. *Pillatos*, 159 Wn.2d at 468. Our Supreme Court held that applying the 2005 SRA amendments would not violate the savings statute because the amendments were procedural, not substantive. *Pillatos*, 159 Wn.2d at 472. Substantive amendments change either the elements of the offense, the severity of the punishment, or what evidence can be used to prove the offense. *See State v. Hylton*, 154 Wn. App. 945, 956, 226 P.3d 246 (citing *Hodgson*, 108 Wn.2d at 669), *review denied*, 169 Wn.2d 1025 (2010). Our Supreme Court stated that because the exceptional sentence was the same before and after the 2005 SRA amendments, nothing in the 2005 SRA amendments increased the severity of punishment, thus the 2005 SRA amendments were procedural. *Pillatos*, 159 Wn.2d at 473.

¶17 The *Pillatos* court's analysis analogizes well to the 2008 SRA amendments that Calhoun challenges in this case. Calhoun argues that the 2008 SRA amendments to former RCW 9.94A.525(21) and former RCW 9.94A.530(2) increase the severity of his punishment because his resentencing offender score is higher than if the amendments were not applied. But, as in *Pillatos*, Calhoun's prior convictions could be used to calculate his offender score both before and after the 2008 SRA amendments. The 2008 SRA amendments do not change the weight given to his prior convictions or increase the standard sentencing range based on Calhoun's offender score. Therefore, applying our Supreme Court's reasoning in *Pillatos*, the 2008 SRA amendments at issue in this case are procedural.

¶18 Calhoun also argues that the 2008 SRA amendments are substantive because they change what evidence the State can use to prove Calhoun's prior convictions. But both before and after the 2008 SRA amendments, the State

must produce evidence to prove all prior convictions by a preponderance of the evidence. RCW 9.94A.530(2). The challenged 2008 SRA amendments change only *when* the State can present this evidence. Thus, we hold that the 2008 SRA amendments are procedural.

Ex Post Facto Violation

¶19 Calhoun argues that the application of the 2008 SRA amendments at his resentencing violated the ex post facto clauses of the state and federal constitutions.

> The ex post facto clauses of the federal and state constitutions forbid the State from enacting any law which imposes punishment for an act which was not punishable when committed or increases the quantum of punishment annexed to the crime when it was committed. U.S. Const. art. 1, § 10; Const., art. 1, § 23; *see Weaver v. Graham*, 450 U.S. 24, 28-29, 17 L. E. 2d 17 101 S. Ct. 960, 964 (1981); *In re [Pers. Restraint of]* *Powell*, [117 Wn.2d 175, 184, 814 P.2d 635 (1991)].

*State v. Ward*, 123 Wn.2d 488, 496, 869 P.2d 1062 (1994). A law violates the ex post facto clauses if it (1) is substantive, as opposed to merely procedural; (2) is retrospective; *and* (3) disadvantages the person affected by it. *Ward*, 123 Wn.2d at 498 (quoting *In re Powell*, 117 Wn.2d at 185). We have determined already that the 2008 SRA amendments are procedural in nature. We also hold that the 2008 SRA amendments do not violate the ex post facto clauses because they are neither retrospective nor disadvantageous to Calhoun. Accordingly, application of the 2008 SRA amendments at Calhoun's 2009 resentencing hearings did not violate ex post facto principles.

¶20 " 'A statute operates prospectively when the precipitating event for [its] application . . . occurs after the effective date of the statute.' " *State v. Blank*, 131 Wn.2d 230, 248, 930 P.2d 1213 (1997) (alterations in original) (quoting *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974)). In *Pillatos*, our Supreme Court applied the *Blank* standard to

the 2005 SRA amendments. 159 Wn.2d at 471. The court found that the precipitating or triggering event for the 2005 SRA amendments was trial or the entry of a guilty plea and *not* the actual criminal act. *Pillatos*, 159 Wn.2d at 471. Therefore, applying the 2005 SRA amendments to trials that began *after* the amendments were enacted is a prospective application of the amendment, not a retroactive application of the law. *Pillatos*, 159 Wn.2d at 471. Here, the "precipitating event" was Calhoun's *resentencing*, not his original sentencing hearing. Applying the 2008 SRA amendments to resentencing hearings that are held after the 2008 SRA amendments were enacted is a prospective application of the amendments.

¶21 Moreover, a statute must disadvantage a defendant in order for it to violate the ex post facto clauses. *Pillatos*, 159 Wn.2d at 476 (quoting *In re Powell*, 117 Wn.2d at 185). The 2008 SRA amendments would disadvantage defendants if they increase the potential punishment that could be imposed. *Pillatos*, 159 Wn.2d at 476. But if a defendant had notice of the punishment at the time of the crime, he is not considered disadvantaged by the change in the law. *Pillatos*, 159 Wn.2d at 475. Because Calhoun was on notice that his criminal history would be used to calculate his offender score and had the ability to calculate his standard sentencing range at the time he committed his crime based on his record of convictions, which is known to him, he was not disadvantaged by the 2008 SRA amendments to the sentencing laws. The 2008 SRA amendments challenged here ensured only that Calhoun's complete criminal history would be considered at any resentencing.

¶22 A full analysis of the retroactive application of the 2008 SRA amendments would involve consideration of both prior convictions not otherwise admissible at the original sentencing hearing and prior convictions that could have been admitted at the original sentencing hearing but were omitted. The facts of this case require us to consider only the admission of criminal history that was not, but that

could have been, admitted at Calhoun's original sentencing hearing and our holding is limited to this circumstance.[9] Based on the facts of this case, we hold that the legislature did not exceed its authority when it amended the SRA to require trial courts to impose sentences based on the defendant's actual criminal history, even if not fully known or disclosed at the original sentencing proceeding. Accordingly, we affirm the resentencing court's application of the 2008 SRA amendments.

## INEFFECTIVE ASSISTANCE OF COUNSEL

¶23 Calhoun argues that he received ineffective assistance of counsel (1) at his original sentencing hearing because his defense counsel failed to object to or independently calculate his offender score and (2) at his resentencing hearings because his new attorney failed to timely obtain transcripts of his original sentencing hearing. The State argues that Calhoun cannot claim ineffective assistance of counsel at his original hearing because we already ruled on that issue in Calhoun's previous appeal. Furthermore, the State argues that Calhoun's ineffective assistance of counsel claim against his attorney at resentencing fails because Calhoun is unable to satisfy either prong of the *Strickland*[10] test. We agree and hold that Calhoun's ineffective assistance of counsel claims fail.

### A. ORIGINAL SENTENCING HEARING

¶24 We decided Calhoun's previous appeal on January 8, 2008. *Calhoun*, noted at 142 Wn. App. 1022. In a statement of additional grounds[11] filed in his original appeal, Calhoun alleged that he received ineffective assistance of counsel.

---

[9] Specifically, we decline to address whether the legislature has authority to allow the trial court to consider additional criminal history that would not have been admissible at the original sentencing.

[10] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[11] RAP 10.10.

We reviewed this issue, holding that "Calhoun has failed to show how his counsel's representation was ineffective," and the record demonstrated "counsel's zealous advocacy in a less-than-ideal working relationship." *Calhoun*, 2008 WL 77389, at *13, 2008 Wash. App. LEXIS 31, at *36.

¶25 Once an issue is decided on appeal, it cannot be reargued unless the decision in the prior appeal is clearly erroneous. *State v. Worl*, 129 Wn.2d 416, 425, 918 P.2d 905 (1996). Calhoun offers no argument that our prior decision was clearly erroneous, thus we do not consider Calhoun's ineffective assistance of counsel claim related to his original sentencing hearing.

¶26 In addition, an assignment of error is moot if there is no remedy that the court can provide to the appellant. *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983). The decision at Calhoun's original sentencing hearing has already been overturned by this court and Calhoun was provided new defense counsel at his resentencing hearings. Therefore, even if we reviewed the merits of Calhoun's claim, there is no present remedy we could provide and we would dismiss this claim on mootness grounds.

B. RESENTENCING HEARINGS

¶27 To establish ineffective assistance of counsel on resentencing, Calhoun must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice would occur here if, but for his counsel's deficient performance, there is a reasonable probability that his sentence would have been different. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998). Calhoun has failed to show either deficient performance or prejudice and his ineffective assistance of counsel claim fails.

¶28 Calhoun's sole allegation of ineffective assistance of counsel at his resentencing hearing is that his counsel

failed to timely request a copy of the transcripts from his original sentencing hearing. But because we hold that the 2008 SRA amendments govern Calhoun's resentencing hearing, no prejudice resulted from the counsel's inability, if any, to effectively cite to Calhoun's alleged objections during his original sentencing hearing. Without a showing of prejudice, Calhoun's ineffective assistance of counsel claim fails.

MISCALCULATION OF CALHOUN'S OFFENDER SCORE

¶29 Finally, Calhoun argues that even if this court does not find the introduction of new evidence at the resentencing hearing error, it will still be necessary to remand because the resentencing court should have calculated Calhoun's offender score as seven, instead of an eight, based on the prior convictions listed on his current judgment and sentence.[12] The State asserts that the resentencing court correctly calculated Calhoun's offender score at eight because it proved the 1998 Oregon conviction for delivery of a controlled substance, which is not reflected in the criminal history on the 2006 judgment and sentence.

¶30 The State presented certified copies of the judgment and sentence documents to prove the following convictions:

(1) 1995 Delivery of Controlled Substance, Oregon

(2) 1998 Delivery of Controlled Substance, Oregon

(3) 1999 Second Degree Assault, Washington

(4) 2001 Delivery of Controlled Substance, Oregon

(5) 2001 Possession of Controlled Substance, Oregon

¶31 The resentencing court specifically relied on these documented convictions to calculate Calhoun's offender

---

[12] Calhoun calculates his offender score as seven based solely on the convictions listed on his 2009 judgment and sentence, which includes five points for prior convictions (1995 delivery of a controlled substance, Oregon—one point; 1999 second degree assault, Washington—two points; 2001 delivery of a controlled substance, Oregon—one point; 2001 possession of a controlled substance, Oregon—one point) and two points for his current convictions (burglary is counted as two points only when sentencing for the robbery; robbery is counted as two points only when sentencing for the burglary).

score. As a result, we believe the failure to include the 1998 conviction on the judgment and sentence was a scrivener's error. Accordingly, we remand to the resentencing court to correct the error. *See State v. Moten,* 95 Wn. App. 927, 934-35, 976 P.2d 1286 (1999). If our review of the record is mistaken and the resentencing court did not consider the 1998 Oregon conviction when calculating Calhoun's offender score, the resentencing court, on remand, should correct the judgment and sentence to reflect Calhoun's proper offender score and resentence him accordingly. RCW 9.94A.525(21).

¶32 We affirm the resentencing court's application of the 2008 SRA amendments to Calhoun's resentencing hearing and hold that Calhoun did not receive ineffective assistance of counsel. We remand to the resentencing court to determine whether the failure to include the 1998 Oregon conviction on the judgment and sentence was (1) a scrivener's error and to correct the judgment and sentence or (2) not a scrivener's error and to resentence Calhoun accordingly.

ARMSTRONG and JOHANSON, JJ., concur.